UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KENNETH PATTERSON,

                    Petitioner,

                                        CASE NO. 2:08-CV-14399
v.                                      HONORABLE ARTHUR J. TARNOW

BARRY DAVIS,

                    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF
HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

**I.      Introduction**

         This is a habeas case under 28 U.S.C. § 2254.  Michigan prisoner Kenneth

Patterson ("Petitioner") was convicted of first-degree murder, MICH. COMP. LAWS

§ 750.316(1)(a), and receiving stolen property, MICH. COMP. LAWS § 750.535(3)(a),

following a jury trial in the Macomb County Circuit Court.  He was sentenced to

concurrent terms of life imprisonment without the possibility of parole and one to five

years imprisonment in 2005.  In his original and supplemental petition, he raises claims

concerning the sufficiency of the evidence, the effectiveness of trial counsel relative to a

jury instruction, the admission of evidence from a non-testifying witness and the non-

harmlessness of that alleged error, the effectiveness of appellate counsel, the effectiveness

1

of trial counsel relative to not calling a police officer and not introducing a police report

concerning the victim's behavior and not properly objecting to the trial court's exclusion

of his videotaped interrogation, and the trial court's exclusion of his videotaped

interrogation.  For the reasons set forth herein, the Court denies the petition for a writ of

habeas corpus.  The Court also denies a certificate of appealability and denies leave to

proceed in forma pauperis on appeal.

## II.      Facts and Procedural History

Petitioner's convictions arise from a 2004 incident in which he beat his ex-

girlfriend, Suzanne Williams, to death, dumped her body in a drainage ditch, and was

arrested a few days later while driving her car.  At trial, witnesses testified that the couple

dated and lived together for a period of time, but had a tumultuous relationship.  At one

point, the victim obtained a personal protection order against Petitioner, which she later

terminated.  The victim believed that Petitioner was stalking her and did not want her to

see other men.

The victim's co-workers testified that they last saw her at work, a Harley Davidson

store, on Friday, December 3, 2004.  She was scheduled to work the next day, but did not

appear.  The victim's friend, Jerald King, testified that he was supposed to meet her for

dinner on December 3, 2004, but she did not show up.  The witnesses called the victim,

but she did not answer.  They drove by her apartment and noticed that her car was

missing.  The victim's co-workers did not know her to carry a weapon.

Petitioner's mother testified that she saw the victim's car at Petitioner's trailer

home on December 3, 2004.  When she saw Petitioner two days later, he acted normally.

Petitioner and the victim had a relationship and he often used the victim's car.

Petitioner's co-workers testified that they saw Petitioner on the weekend in

question and did not notice anything out of the ordinary in his behavior.  One co-worker

drove Petitioner home from work on December 4, 2004 and Petitioner seemed tired and

slept part of the way.  Another co-worker saw him at a hockey game that night.

A man named Keith Thompson found the victim's body in a ditch near some old

stores near 14 Mile Road and VanDyke in Sterling Heights on December 5, 2004.

Thompson testified that he was walking in the area when he saw a woman in a bra and

underwear lying in the ditch and called the police.  When police arrived, they noticed

blood near a parking lot curb and on dried leaves near an embankment.  They also found a

Harley Davidson earring in the parking lot.

Later that same day, one of the victim's co-workers learned that a woman

matching the victim's description had been found.  She called the police and gave them a

description.  She told them that she had been unable to contact the victim and that the

victim's car was missing.  The police learned that the victim's car had OnStar and were

able to track its location to Allen Park.  They conducted a traffic stop of the car and found

Petitioner to be the driver.  Petitioner told them it was his girlfriend's car.  He was

subsequently arrested.

Police officers searched Petitioner's trailer and truck.  An officer testified that the

police found blood stains on the porch, the concrete walkway, the hallway wall, a door

and door handle, the master bedroom door, the master bedroom wall, blinds, window, and

bed, and the bathroom vanity, as well as in Petitioner's truck and the victim's car.  Some

samples taken from Petitioner's trailer matched the victim's DNA.  Samples from the bed

matched Petitioner and the victim.

The medical examiner testified that the victim died from blunt force head trauma

and suffered multiple injuries.  She had lacerations down to the bone from two impacts to

the back of her head, one of which would have been incapacitating.  She had a fractured

skull and bleeding on the brain.  She had a bruised forehead from a separate impact,

which may have occurred from a fall to the ground.  She also had bruised, cut lips and a

chipped front tooth consistent with a punch to the face, a bruised knee consistent with a

fall, and a defensive wound on her left arm.  A baseball bat could have inflicted the

injuries.  The victim died before her body was left in the ditch.

Petitioner testified in his own defense at trial.  He admitted killing victim, but

claimed self-defense.  According to Petitioner, he and the victim argued on Wednesday,

4

December 1, 2004.  She came to his trailer around 6:00 p.m. on December 3, 2004.  They

drank and talked.  After they went to the bedroom to lay down, the victim accused him of

giving her crabs.  He left the bedroom and went into the kitchen to clean up and the

victim went into the living room to look at CDs.  Petitioner then told the victim that their

relationship was over, but she disagreed.  Petitioner continued to clean and told her to

leave.  When he walked over to grab her, she attacked him.  He wanted to leave, but she

hit him in the back of the head.  He turned around and hit her in the mouth.  The victim

then threatened to blow him away and reached into her pocket.  Petitioner was against the

door and grabbed a nearby bat.  When the victim came toward him, he hit her on the head

with the bat.  The victim fell.  Petitioner saw that she had a knife in her hand and she tried

to jab him.  He picked up the bat and hit her again.  She fell down.  Petitioner saw blood

and asked if she was alright.  He got a sheet from the middle bedroom and put it on her

head.  He got some change and went to a pay phone.  It was in use so he returned to the

trailer.  He pulled the victim to the back bedroom to make her comfortable.  Her shirt

ripped when he tried to pick her up.  He went to get ice and when he returned, he noticed

that she was not breathing.  Petitioner testified that he sat in the living room for 45

minutes.  When he went back into the bedroom, the victim was purple.  He returned to the

living room to decide what to do.

Petitioner cleaned his head with a washcloth.  He then drove the victim's car to the Native American Center near his home and walked back to the trailer.  He moved the victim onto a blanket.  Her jeans came down, but she was too heavy to move to fix them, so he pulled them off.  He put the victim in the flatbed of his truck and drove to the 14 Mile and VanDyke near a closed business.  He removed the victim from the truck, but slipped on the hill.  The victim's body rolled down the embankment and Petitioner heard a splash.  He picked up the blanket, got into his truck, and drove home.  He thought about calling the police, but was afraid.  He cleaned up the blood and went to sleep.  Petitioner never found a gun.  He said he found a knife, but it was not the knife the victim used to strike at him.  He drove the victim's car to work on Saturday, December 4, 2004, but a co-worker drove him home.  He took a nap, then went to a hockey game.  On Sunday, December 5, 2004, his mother came by and he used her cell phone to try to find an attorney, but was unsuccessful.  On Monday, December 6, 2004, he drove his truck to work and where he left the victim's car.  He switched cars and was on his way to visit friends when he was stopped by the police and arrested.

At the close of trial, the trial court instructed the jury about the elements of the charged offenses, the lesser offenses of second-degree murder and manslaughter, the concepts of premeditation and deliberation, lawful self-defense, and other pertinent matters.  There were no objections to the instructions as given.  Following deliberations,

the jury convicted Petitioner of first-degree murder and receiving stolen property. The

trial court subsequently sentenced him to concurrent terms of life imprisonment without

parole and one to five years imprisonment.

Petitioner filed an appeal of right with the Michigan Court of Appeals raising

claims concerning the sufficiency of the evidence and the effectiveness of trial counsel

relative to the jury instructions. The court denied relief on those claims and affirmed his

convictions. *People v. Patterson*, No. 266945, 2007 WL 1160179 (Mich. Ct. App. April

19, 2007) (unpublished). Petitioner filed an application for leave to appeal with the

Michigan Supreme Court raising the same claims. The court denied leave to appeal in a

standard order. *People v. Patterson*, 480 Mich. 890, 738 N.W.2d 722 (Sept. 24, 2007).

Petitioner thereafter filed his initial federal habeas petition, which was dated on

September 23, 2008. He raised claims concerning the sufficiency of the evidence, the

effectiveness of trial counsel relative to a jury instruction, the admission of evidence from

a non-testifying witness, and the non-harmlessness of that alleged error. On March 12,

2009, the Court determined that the petition contained claims which had not been

exhausted in the state courts, held the petition in abeyance so that Petitioner could return

to the state courts to pursue his unexhausted claims, and administratively closed the case.

The Court conditioned the stay on Petitioner moving to reopen the case within 60 days of

the Michigan Supreme Court's decision, but did not set a time frame for filing a motion

for relief from judgment with the state trial court.

On July 3, 2012, Petitioner filed a motion for relief from judgment in the state trial

court raising claims concerning the effectiveness of appellate counsel, the effectiveness of

trial counsel relative to not calling a police officer and not introducing a police report

concerning the victim's behavior and not properly objecting to the trial court's exclusion

of his videotaped interrogation, and the trial court's exclusion of his videotaped

interrogation.  He did not include the unexhausted claims contained in his original habeas

petition.  The trial court denied the motion finding that the claims lacked merit and could

have been raised on appeal, and finding that even if Petitioner could establish cause for

the failure to raise the claim on direct appeal, he did not experience actual prejudice.

*People v. Patterson*, No. 2005-334-FC (Macomb Co. Cir. Ct. July 27, 2012).

Petitioner filed an application for leave to appeal with the Michigan Court of

Appeals, which was denied "for failure to establish entitlement to relief under MCR

6.508(D)." *People v. Patterson*, No. 312148 (Mich. Ct. App. June 28, 2013).  Petitioner

filed an application for leave to appeal with the Michigan Supreme Court, which was

similarly denied.  *People v. Patterson*, 495 Mich. 900, 839 N.W.2d 218 (Nov. 25, 2013).

Petitioner thereafter moved to reopen this case and filed an amended

(supplemental) habeas petition, which was dated on December 9, 2013.  He raises claims

concerning the effectiveness of appellate counsel, the effectiveness of trial counsel

relative to not calling a police officer and not introducing a police report concerning the

victim's behavior and not properly objecting to the trial court's exclusion of his

videotaped interrogation, and the trial court's exclusion of his videotaped interrogation.

Respondent has filed an answer to the petition, as amended, contending that the claims

raised in his supplemental petition are untimely, procedurally defaulted, and/or lack merit,

that the unexhausted claims in his original petition are still unexhausted and now

procedurally defaulted, and that the exhausted claims in his original petition lack merit.

Petitioner has not filed a reply to that answer.

## III.   **Standard of Review**

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

(1)   resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court has held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain federal habeas relief, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an

unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.   Analysis

### A.   Timeliness of Claims in the Supplemental Petition

As an initial matter, Respondent contends that the claims in Petitioner's

supplemental habeas petition concerning the effectiveness of appellate counsel, the

effectiveness of trial counsel relative to not calling a police officer and not introducing a

police report concerning the victim's behavior and not properly objecting to the trial

court's exclusion of his videotaped interrogation, and the trial court's exclusion of his

videotaped interrogation are barred by the one-year statute of limitations applicable to

federal habeas actions.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified

at 28 U.S.C. § 2241 *et seq*., includes a one-year period of limitations for habeas petitions

brought by prisoners challenging state court judgments.  The statute provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State
> court.  The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion
> > of direct review or the expiration of the time for seeking such
> > review;
> >
> > (B) the date on which the impediment to filing an application created
> > by State action in violation of the Constitution or laws of the United
> > States is removed, if the applicant was prevented from filing by such
> > State action;

      (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  A habeas petition filed outside the proscribed time period must be dismissed.  *See Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000) (dismissing case filed 13 days late); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

      Petitioner's convictions became final after the AEDPA's effective date. The Michigan Supreme Court denied leave to appeal on direct appeal on September 24, 2007. Petitioner's convictions became final 90 days later, *see Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009) (a conviction becomes final when "the time for filing a certiorari petition expires"); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007); S. Ct. R. 13(1), on or about December 23, 2007.  Accordingly, Petitioner was required to file his federal habeas petition by December 23, 2008, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

14

*Patterson v. Davis*
Case No. 2:08-CV-14399
Page 15 of 35

Petitioner dated his original habeas petition on September 23, 2008. At that point, about nine months (274 days) of the one-year period had expired. The Court then stayed the proceedings and administratively closed the case on March 12, 2009. While the one-year period was tolled as to the claims contained in the original petition, it was not tolled for any claims not so included. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (ruling that federal habeas petition does not statutory toll the one-year period).

Moreover, the claims in the supplemental petition do not relate back to the original petition. Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the amended claims are tied to the "same core of operative facts" alleged in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). "An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. An amended petition does not relate back to an original petition simply because both petitions arise from the same trial and convictions. *Id.* As explained by the Supreme Court, if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

15

*Patterson v. Davis*
Case No. 2:08-CV-14399
Page 16 of 35

In this case, the claims in Petitioner's supplemental petition, which concern the effectiveness of appellate counsel, the effectiveness of trial counsel relative to not calling a police officer and not introducing a police report involving the victim's behavior and not properly objecting to the trial court's exclusion of his videotaped interrogation, and the trial court's exclusion of his videotaped interrogation, do not arise from the same set of operative facts as the claims in Petitioner's original petition, which concern the sufficiency of the evidence, the effectiveness of trial counsel relative to a jury instruction, the admission of evidence from a non-testifying witness, and the non-harmlessness of that alleged error. Even Petitioner's supplemental ineffective assistance of trial counsel claims are based upon different facts and underlying claims of error than his original ineffective assistance of counsel claim. As such, they do not relate back. *See, e.g., United States v. Hernandez*, 436 F.3d 851, 858 (8th Cir. 2006) (petitioner's new specific claims of ineffective assistance did not relate back to his previous unrelated claims); *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (petitioner did not satisfy relation back standard where new petition asserted ineffective assistance claim based upon a different type of attorney error than asserted in original petition). Petitioner's supplemental claims do not relate back to his original petition.

Because the supplemental claims do not relate back, Petitioner had about three months (91 days) of the limitations period remaining in which to file his state court

16

*Patterson v. Davis*
Case No. 2:08-CV-14399
Page 17 of 35

motion for relief from judgment, thereby statutorily tolling the one-year period, and then return to federal court after completing the state court process as to those claims. Petitioner, however, did not file his state court motion for relief from judgment until July 3, 2012 - more than three years after the one-year period expired as to the supplemental claims. A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no time remaining to be tolled. *Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). The limitations period is only tolled while a petitioner has a properly filed motion for post-conviction or collateral review under consideration. 28 U.S.C. § 2244(d)(2); *Hudson v. Jones*, 35 F. Supp. 2d 986, 988 (E.D. Mich. 1999). The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001).

Petitioner neither alleges nor establishes that the State created an impediment to the filing of his supplemental habeas claims or that his claims are based upon newly-discovered evidence or newly-enacted, retroactively applicable law. His supplemental claims are therefore untimely under 28 U.S.C. § 2244(d).

The United States Supreme Court has confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *Holland v.*

17

*Florida*, 560 U.S. 631, 645 (2010).  The Supreme Court has further explained that a

habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way' and prevented timely filing."  *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S.

408, 418 (2005)); *see also Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010).

A petitioner has the burden of demonstrating entitlement to equitable tolling.  *Allen v.*

*Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  "Typically, equitable tolling applies only

when a litigant's failure to meet a legally-mandated deadline unavoidably arose from

circumstances beyond that litigant's control."  *Jurado*, 337 F.3d at 642 (quoting

*Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir.

2000)).

　　　　Petitioner neither alleges nor establishes that he is entitled to equitable tolling of

the one-year period.  While he alleges that appellate counsel was ineffective as cause to

excuse the procedural default in state court, he does not assert a defense to Respondent's

contention that the habeas petition is untimely.  Moreover, any perceived error by

appellate counsel in failing to raise the supplemental issues on direct appeal in the state

courts does not excuse Petitioner's failure to file his state court motion for relief from

judgment in a timely manner.  The fact that Petitioner is untrained in the law, is (or was)

proceeding without a lawyer, or may have been unaware of the statute of limitations does

not warrant tolling.  *See Allen*, 366 F.3d at 403 (ignorance of the law does not justify

tolling); *Rodriguez v. Elo*, 195 F. Supp. 2d 934, 936 (E.D. Mich. 2002) (the law is

"replete with instances which firmly establish that ignorance of the law, despite a

litigant's pro se status, is no excuse" for failure to follow legal requirements); *Holloway v.

Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (lack of professional legal

assistance does not justify tolling); *Sperling v. White*, 30 F. Supp. 2d 1246, 1254 (C.D.

Cal. 1998) (citing cases stating that ignorance of the law, illiteracy, and lack of legal

assistance do not justify tolling).  Petitioner also did not act diligently in pursuing his

supplemental claims given that he waited more than three years after the Court stayed his

original habeas proceedings to seek state collateral review.  Petitioner fails to show that

he is entitled to equitable tolling under *Holland*.

Both the United States Supreme Court and the United States Court of Appeals for

the Sixth Circuit have held that a credible claim of actual innocence may equitably toll

the one-year statute of limitations.  *McQuiggin v. Perkins*, _ U.S. _, 133 S. Ct. 1924, 1928

(2013); *Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005).  As explained in *Souter*, to

support a claim of actual innocence, a petitioner in a collateral proceeding "must

demonstrate that, in light of all the evidence, it is more likely than not that no reasonable

juror would have convicted him."  *Bousley v. United States*, 523 U.S. 614, 623 (1998)

(quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also House v. Bell*, 547 U.S.

518, 537-39 (2006). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. In keeping with Supreme Court authority, the Sixth Circuit has recognized that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Souter*, 395 F.3d at 590 (quoting *Schlup*, 513 U.S. at 321). Petitioner makes no such showing. He is thus not entitled to equitable tolling. His supplemental claims are untimely and must be dismissed.

### B.    Unexhausted Claims in Original Petition

Respondent also contends that the unexhausted claims in Petitioner's original habeas petition concerning the admission of evidence from a non-testifying witness and the non-harmlessness of that alleged error are still unexhausted and are now procedurally defaulted and subject to dismissal.

A state prisoner filing a habeas petition under 28 U.S.C. §2254 must first exhaust state court remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  To satisfy the exhaustion

requirement, the claims must be "fairly presented" to the state courts, meaning that the

petitioner must have asserted both the factual and legal bases for the claims in the state

courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *see also Williams v.*

*Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *McMeans*).  The claims must be

presented to the state courts as federal constitutional issues.  *Koontz v. Glossa*, 731 F.2d

365, 368 (6th Cir. 1984).  For a Michigan prisoner, each issue must be raised before the

Michigan Court of Appeals and the Michigan Supreme Court to satisfy the exhaustion

requirement.  *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (citing *Hafley v.*

*Sowders*, 902 F.2d 480, 483 (6th Cir. 1990)).  While the exhaustion requirement is not

jurisdictional, a "strong presumption" exists that a prisoner must exhaust available state

court remedies before seeking federal habeas review.  *Granberry v. Greer*, 481 U.S. 129,

131, 134-35 (1987); *Wagner*, 581 F.3d at 415 (citing *Harris v. Lafler*, 553 F.3d 1028,

1031 (6th Cir. 2009)).  The burden is on the petitioner to prove exhaustion.  *Rust*, 17 F.3d

at 160.

In this case, Petitioner admitted that he had not exhausted his initial petition claims

concerning the admission of evidence from a non-testifying witness and the non-

harmlessness of that alleged error at the time he filed his initial petition and the record

indicates that he did not raise any of those claims in his subsequent state court motion for

relief from judgment and related appeals.  Petitioner has thus failed to exhaust the issues

in the state courts.  Moreover, he no longer has an available means by which to do so.

Any attempt to file a second motion for relief from judgment would be futile.  Under

Michigan Court Rule 6.502(G)(1), a state criminal defendant is generally permitted to

only file one post-conviction motion for relief from judgment.  *Gadomski v. Renico*, 258

F. App'x 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D.

Mich. 1999).  The unexhausted claims do not fall within the exceptions for filing a second

motion for relief from judgment.

Because Petitioner has not exhausted the claims in the state courts and no longer

has an available remedy by which to do so, the claims are procedurally defaulted.  When

a habeas petitioner fails to properly present claims to the state courts and is barred from

pursuing further relief under state law, he has procedurally defaulted those claims for

purposes of federal habeas review.  *See Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir.

2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)).

Federal habeas relief is precluded on claims which have not been presented to the

state courts in accordance with the state's procedural rules.  *Wainwright v. Sykes*, 433

U.S. 72, 85-87 (1977).  A state prisoner who fails to comply with a state's procedural

rules waives the right to federal habeas review absent a showing of cause for

noncompliance and actual prejudice resulting from the alleged constitutional violation, or

a showing of a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner neither alleges nor establishes cause to excuse this procedural default. Any alleged deficiencies by appellate counsel relative to direct appeal are immaterial because Petitioner could have still properly exhausted these claims on collateral review in the state courts. A prisoner's pro se status or lack of knowledge about state court rules does not constitute cause to excuse a procedural default. *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995); *Robertson v. Abramajtys*, 144 F. Supp. 2d 829, 838 (E.D. Mich. 2001). A court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Petitioner also fails to demonstrate that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). As discussed, a credible claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup*, 513 U.S. at 324. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623.

23

Petitioner makes no such showing.  These claims are thus barred by procedural default and do not warrant habeas relief.

### C.    Insufficient Evidence Claim

Petitioner asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence, particularly of premeditation and deliberation, to support his first-degree murder conviction.  Respondent contends that this claim lacks merit.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d).  *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  Thus, under the AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Furthermore, the *Jackson* standard must be applied "with explicit reference to the

substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*,

441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).

A federal court views this standard through the framework of 28 U.S.C. § 2254(d).

*Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Under the AEDPA, challenges to

the sufficiency of the evidence "must survive two layers of deference to groups who

might view facts differently" than a reviewing court on habeas review – the factfinder at

trial and the state court on appellate review – as long as those determinations are

reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[I]t is the

responsibility of the jury – not the court – to decide what conclusions should be drawn

from the evidence admitted at trial." *Cavazos v. Smith*, _ U.S. _, 132 S. Ct. 2, 4 (2011)

(per curiam). "A reviewing court does not re-weigh the evidence or re-determine the

credibility of the witnesses whose demeanor has been observed by the trial court."

*Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v.*

*Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient

evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

Under Michigan law, first-degree premeditated murder requires proof that the

defendant intentionally killed the victim and that the killing was premeditated and

deliberate. *People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480 (1998); MICH.

COMP. LAWS § 750.316. Premeditation and deliberation may be established by evidence

showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992); *see also People v. Abraham*, 234 Mich. App. 640, 656, 599 N.W.2d 736 (1999).

Some time span between the initial homicidal intent and the ultimate killing is necessary to establish premeditation and deliberation, *People v. Gonzalez*, 468 Mich. 636, 641, 664 N.W.2d 159 (2003), but the time required need only be long enough "to allow the defendant to take a second look." *Schollaert*, 194 Mich. App. at 170. An interval of a few seconds can be sufficient to create a jury question on the issue of premeditation. *People v. Tilley*, 405 Mich. 38, 45, 273 N.W.2d 471 (1979). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *People v. Berry*, 198 Mich. App. 123, 128, 497 N.W.2d 202 (1993). Use of a lethal weapon supports an inference of an intent to kill. *People v. Turner*, 62 Mich. App. 467, 470, 233 N.W.2d 617 (1975). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462 Mich. 392, 402-03, 614 N.W.2d 78 (2000).

The Michigan Court of Appeals considered this claim on direct appeal and denied

relief.  The court explained:

> Defendant argues that there was insufficient evidence of premeditation and
> deliberation to allow the jury to find him guilty of first-degree murder. In
> reviewing the sufficiency of the evidence, this Court must view the
> evidence in the light most favorable to the prosecution to determine whether
> a rational trier of fact could find that the essential elements of the crime
> were proven beyond a reasonable doubt. *People v. Tombs*, 472 Mich 446,
> 459; 697 NW2d 494 (2005).

> First-degree murder requires that the defendant killed the victim and that
> the killing was "willful, deliberate, and premeditated." MCL 750.316(1)(a).
> Defendant admitted at trial that he killed the victim in his home and
> transported her to the site where she was found. "Premeditation, which
> requires sufficient time to permit the defendant to take a second look, may
> be inferred from the circumstances surrounding the killing." *People v. Coy*,
> 243 Mich App 283, 315; 620 NW2d 888 (2000). "Premeditation and
> deliberation may be established by evidence of '(1) the prior relationship of
> the parties; (2) the defendant's actions before the killing; (3) the
> circumstances of the killing itself; and (4) the defendant's conduct after the
> homicide.'" *People v. Abraham*, 234 Mich App 640, 656; 599 NW2d 736
> (1999), quoting *People v. Schollaert*, 194 Mich App 158, 170; 468 NW2d
> 312 (1992).

> In this case, the evidence showed that defendant and the victim had a rocky
> relationship. Defendant was known to stalk the victim and had at least one
> documented violent outburst, damaging a male friend's car. The victim
> obtained a PPO the year before her death due to defendant's escalating
> temper, although she terminated it shortly after it went into effect.

> With regard to the killing itself, the evidence supported an inference that the
> victim was attacked in defendant's master bedroom, not the main entrance
> as he claimed. The victim was struck a minimum of three times with a
> baseball bat and the blows to her head were so forceful that her skull was
> fractured and her brain was injured. Furthermore, the victim sustained a

defensive wound to her left arm. *People v. Johnson*, 460 Mich 720, 733; 597 NW2d 73 (1999). And despite claiming a desire to seek help for the victim, defendant did not call 911 or rouse any of his neighbors.

The evidence showed that after the killing, defendant went about his normal activities. He went to work the next day and to his coworker's son's hockey game that night, and washed dishes the following day. Defendant also methodically cleaned the crime scene and disposed of the victim's body and initially her car. Viewed in the light most favorable to the prosecution, there was sufficient evidence of premeditation and deliberation to allow the jury to find defendant guilty of first-degree murder..

*Patterson*, 2007 WL 1160179 at *1.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The prosecution presented sufficient evidence to establish Petitioner's guilt of first-degree murder, through the testimony of the victim's co-workers and friends, the investigating police officers, and the medical examiner, as well as Petitioner's own testimony, and reasonable inferences therefrom. Petitioner's intent to kill, including premeditation and deliberation, was established by his tumultuous relationship with the victim, his punch to the victim's face and his subsequent use of a baseball bat to strike the victim repeatedly, the extent of the victim's injuries and defensive wounds, his failure to seek medical help or contact the police, and his actions after the crime, including his disposal of the victim's body, his clean-up of the crime scene, his seemingly normal work and social behavior, and his driving the victim's car around town. Petitioner had time to consider his actions and take a "second look" during

the incident before killing the victim.  Considered in a light favorable to the prosecution, the trial testimony and physical evidence was sufficient to show that Petitioner beat the victim to death and that he acted with the requisite intent to support his first-degree murder conviction.

Petitioner challenges the inferences the jury drew from the testimony presented during trial.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.  The evidence presented at trial, viewed in a light favorable to the prosecution, establish beyond a reasonable doubt that Petitioner committed first-degree murder.  Habeas relief is not warranted on this claim.

### D.    Ineffective Assistance of Counsel Claim

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to request a jury instruction, CJI2d 7.17, which would have

informed the jurors that he did not have a duty to retreat in his own dwelling.  Respondent

contends that this claim lacks merit.

The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*,

466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for

determining whether a habeas petitioner has received ineffective assistance of counsel.

First, a petitioner must prove that counsel's performance was deficient.  This requires a

showing that counsel made errors so serious that he or she was not functioning as counsel

as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the

petitioner must establish that counsel's deficient performance prejudiced the defense.

Counsel's errors must have been so serious that they deprived the petitioner of a fair trial

or appeal.  *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside

the wide range of professionally competent assistance." *Id*. at 690.  The reviewing

court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.  There is a

strong presumption that trial counsel rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.  The

petitioner bears the burden of overcoming the presumption that the challenged actions

were sound trial strategy.

2:08-cv-14399-AJT-RSW   Doc # 22   Filed 04/14/16   Pg 31 of 35   Pg ID 1126

Patterson v. Davis
Case No. 2:08-CV-14399
Page 31 of 35

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Michigan Court of Appeals considered this claim on direct appeal and denied relief. The court explained:

Defendant also argues that defense counsel was ineffective for failing to request CJI2d 7.17, which would have instructed the jury that defendant did not have a duty to retreat in his own dwelling.

Because defendant did not raise this issue in a motion for a new trial or request for a Ginther2 hearing, our review is limited to mistakes apparent from the record. *People v. Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). The determination whether a defendant has been deprived of the effective assistance of counsel is a mixed question of fact and constitutional law. *People v. LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, a defendant must show that counsel's deficient performance denied him the Sixth Amendment right to counsel and that, but for counsel's errors, the result of the proceedings would have been different. *People v. Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005).

The prosecutor argues that there was no evidence that defendant was attacked in his home, and thus, the instruction was not appropriate. We disagree. Defendant's testimony that the victim attacked him in his home was sufficient to support the instruction. Thus, the trial court would have been obliged to give it upon request. *People v. Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002).

However, we do not agree with defendant that, had the instruction been given, there is a reasonable likelihood the outcome of the trial would have been different. Defendant argues that the omitted instruction denied him of his theory of self-defense, which he maintained throughout trial. But the jury was instructed on self-defense in accordance with CJI2d 7.15. Even if the no duty to retreat instruction had been given, the jury still had to determine if defendant acted honestly and reasonably in protecting himself, which was part of the self-defense instruction that was given. "Even if the instructions are somewhat imperfect, reversal is not required if the instructions fairly presented the issues to be tried and were sufficient to protect the rights of the defendant." *People v. Fennell*, 260 Mich App 261, 265; 677 NW2d 66 (2004). Therefore, defendant's ineffective assistance of counsel claim fails because he cannot show that he was prejudiced.

*Patterson v. Davis*
Case No. 2:08-CV-14399
Page 33 of 35

*Patterson*, 2007 WL 1160179 at *2 (footnote omitted).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1]  Even assuming that counsel erred by failing to request the no duty to retreat instruction, Petitioner fails to establish that he was prejudiced by counsel's conduct.  First, the trial court's self-defense instruction was adequate to inform the jury about Petitioner's claimed defense and to protect his rights.  The court specifically instructed the jurors that Petitioner could take appropriate actions to defend himself if he reasonably believed that his life was in danger or that he was subject to serious physical injury at the time of the altercation with the victim.  The court did not indicate that Petitioner had any duty to retreat.  Second, given the strength of the evidence supporting the first-degree murder conviction, including the injuries to the victim and Petitioner's actions after her death, there is no reasonable probability that the duty to retreat instruction would have affected the outcome at trial.  Petitioner fails to establish that trial counsel was ineffective.  Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to relief on his claims and that the petition for a writ of habeas corpus must be denied.

---

[1]The Court would reach the same result under a de novo standard of review.

33

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural rulings.  No certificate of appealability is warranted.  Nor should Petitioner be granted leave to

proceed in forma pauperis on appeal as an appeal cannot be taken in good faith. *See* FED.

R. APP. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and

**DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** and

leave to proceed in forma pauperis on appeal is **DENIED**.

S/Arthur J. Tarnow
ARTHUR J. TARNOW
SENIOR UNITED STATES DISTRICT JUDGE

Dated: April 14, 2016